UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF KENTUCKY

______________________________________X

DEMETRIUS HILL, PRO SE,
PLAINTIFF,

-against-

HARLEY LAPPIN,BOP DIRECTOR, ET AL.,
DEFENDANTS.

______________________________________X

Eastern District of Kentucky
FILED
JAN 13 2009
AT LEXINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

MEMORANDUM OF LAW
IN SUPPORT OF A TRO
AND PRELIMINARY
INJUNCTION

STATEMENT OF THE CASE

This is a civil rights action brought by a federal prisoner via Bivens v. Six Unknown Federal narcotics agents, 403 U.S. 388 (1971).Who is pending transfer to USP Lewisburg, where he may be killed or otherwise brutalized by the staff of that institution, as was the case in the previous time he was there.

POINT ONE
THE PLAINTIFF IS ENTITLED
TO A TRO AND PRELIMINARY
INJUNCTION.

In determining whether a plaintiff is entitled to a TRO or a preliminary injunction, the courts generally look to several factors:

"whether the party will suffer irreparable injury, the balance of hardships, between the parties, the liklihood of success on the merits, and the public intrest."

Each of these factors favors the grant of this motion.

A. THE PLAINTIFF IS THREATENED WITH IRREPARBLE HARM.

In the attached affidavit the plaintiff states under the penalty of perjury that he was the victim of a previous assault while at lewisburg, in 2005, and that the officers got away with it because they have a secret basement, that they use to beat him off camera. And that they attempted to have him killed by spreading a rumor in 2006 that he was a "RAT". Plaintiff also avers that he has been the subject of numerous, retaliatory transfers, by the BOP for the filing of complaints and civil suits against BOP staff. Further lewisburg

has a "culture of abuse" that is condoned by that facilitys administrative staff, and the regional director of that region. The wide spread of abuse at a prison can form the basis for injunctive relief, see, Attica v. Rockfeller, 718 f.supp.1111 (SDNY 1989), 453 f.2d 12,22-23,(2d cir.1971); Ruiz v. Estelle 503 f.supp.1265(S.D.Tex.1980), Cohen v. Coahoma county, miss.,805 f.supp.398, 405-06,(N.D.Miss.1992) (granting injunction based on a single incident because the sheriff said he would do the same thing under similar circumstances.) The constitution requires prison and jail officials to provide "reasonable safety" for prisoners, Helling v. McKinney, 113 S.Ct.2475,2480(1993).Farmer v. Brennan, 114S.Ct.1970,1982,(1994)("it does not matter whether a prisoner faces an excessive risk of attack for reasons personal to him or because all prisoners in his situation face such a risk.") In this case the threat is from the very people entrusted to keep all prisoners safe. AS such the court should grant the injunction because the harm will be irreparable, and it can be proved that many prisoners have been victims of the same attacks at that institution.

B.THE BALANCE OF HARDSHIPS FAVORS THE PLAINTIFF.

The suffering of plaintiff if the TRO or Preliminary injunction is not granted far out weigh the defendants, if it could be said they will suffer at all. See, Mitchell v. Cuomo, 748 f.2d 804,808,(2d cir.1984) (holding that dangers posed by prison crowding outweigh states finantial and administrative concerns.)In this case their is a legitimate concern that plaintiff willsuffer irreparably by being the subject of another assault or he could be killed by staff, moreover their are "15" penitentiarys in the country. And not transfering plaintiff can only save money see, exhibit(b) where even the news papers tracked the cost of all the transfers plaintiff has endured.

C.THE PLAINTIFF IS LIKELY TO SUCCEED ON THE MERITS.

The plaintiff has a great likelihood of success on the merits. What the defendants have done---intentionally subjecting plaintiff to repeated retaliatory transfers, has been held by many courts to violate the constitution, Williams v. Meese,926 f.2d 994,998,(10th cir. 1991)(job denials and transfers); DACE v. Solem, 858 f.2d 385,388,(8th cir. 1988)(retaliatory reclassification);Majid v.

Henderson 533 f.supp. 1257,1270,(SDNY 1982)(and cases cited)(transfers).CF.Miller v. leathers, 913 f.2d 1085,1088,(4th cir.1990)(en banc) (the fact that the plaintiff had previously filed a grievance against the officer and that the officer removed him from his cell without a supervisor, present in violation of prison regulations could support the inference that the officer intended to retaliate against the prisoner).In this case the plaintiff has been shipped all around the country, without the oppurtunity to challenge these transfers and with little or no justification... And plaintiff can prove that it has been a direct result of his filing complaints against staff.

<u>D.THE RELIEF SOUGHT WILL SERVE THE PUBLIC INTREST.</u>

In this case, the grant of relief will serve the public intrest, because it is always in the public intrest to obey the law, and not retaliate against prisoners for seeking redress,Duran v. Anaya, 642 f.supp. 510,527,(D.N.M.1986) ("Respect for law, particularly by officials responsible for administration of the states correctional system, is in itself a matter of the highest public intrest".)

Usually a litigant is required to post security when he obtains interim relief, Rule 65 (c),fed. R.civ.P. however the plaintiff is indigent and the court has discretion to excuse an impoverished litigant, see, Orantes-Hernandez, v. Smith, 541 F.supp.351,385,n.30 (C.D.Cal.1982).

Because the plaintiff is not a lawyer and has limited resources, the court should take this into consideration and not hold plaintiff to those stringent standards. And plaintiff prays the court will grant the relief sought herein, as the transfer may be done at any time.

Respectfully

DEMETRIUS HILL PRO SE,
USP MCCREARY P.O.BOX 3000
pine knot, Ky, 42635

Pursuant to 28 U.S.C.1746, I declare under penalty of perjury that the foregoing is true and correct.

Demetrius Hill 1/9/09

— I DEMETRIUS HILL Declare under Penalty of Perjury —



1. I am the Plaintiff in this case. And state these facts under penalty of perjury, except to those facts stated to be upon belief, and as to those Plaintiff believes them to be true and accurate, to the best of his knowledge.

2. Since entering the B.O.P. in 2002 at the brooklyn M.D.C., Plaintiff, has been incarcerated at over "12" institutions. In the last two years from 2006 to 2008 plaintiff has been moved to at least "5" different penitentiarys.

3. While at Lewisburg in 2005 ( before I was even sentenced) Plaintiff was viciously assaulted by numerous staff in the "basement" of that facility, where there are no cameras. The staff easily covered up the attack and because their were no cameras Plaintiff was unable to prove his allegations in court, to the judge. Plaintiff, had immediatly filed suit, and although he did not prevail, he was shortly moved out of that facility, and back to a pre-trial facility.

4. A culture of abuse exists at lewisburg, and a blind eye is turned by the administrative staff, and the regionh, as well. The BOP has now converted this facility into a"control " unit known as the special management unit (SMU), this unit does not exist in the national policy.

5. Plaintiff was sent there in an act of retaliation in 2005, and he subsequently filed suit, see HILL v. Laird, 06-CV-0126 (E.D.N.Y.) (JS)(MLO), the abuses in that complaint caused at least one defendant to be prosecuted by the U.S.Attorneys office for the E.D.N.Y., for "acting out the same allegations in the complaint" against another prisoner, see exhibit (a).

6. After Plaintiff was sentenced in 2006, he was sent back their again. This time the staff released plaintiff to the facility population, and spread a rumor amongst the prisoners that plaintiff was a "RAT", and should be stabbed. The staff then locked plaintiff back in s.h.u. then moved him back to s.m.u., then trasfered him to Hazelton. Plaintiff, began filing complaints against staff at Hazelton for unsanitary and draconian conditions of confinement, and was again transfered to terra haute where the staff claimed not to know why he was there, but kept him in the S.H.U. and transfered him again. This time he went to Big Sandy, where he had one incident that he did not provoke,

( not acts of violence whether in self defense or not are tolerated and no one is transfered for one incident).

and Plaintiff was put in for a transfer again, Plaintiff had begun to file complaints about the staff and their abusive actions, inter alia, well Plaintiff was taken into a back office and forced to "informally resolve" his complaints. He was then again assaulted and transfered the very next day, to LEE county, where he began filing about retaliatory transfers and that facilitys attempt to transfer Plaintiff again. When Plaintiff began to file complaints, his transfer was denied, despite the fact that the institution refused to allow plaintiff to go to the general population. So plaintiff was kept in the SHU for "10" months then was transfered on a " Warden to Warden" transfer, and not through regular BOP designation.

7. While at LEE Plaintiff exhausted his administrative remedys on past, present and future "Retaliatory Transfers", the BP 11, was sent to Harley Lappin, the BOP director. Plaintiff never received a response from him, however he was well aware of the retaliatory transfers via Hill v. Laird, supra, and he even approved a "state placement" transfer for plaintiff, but he was sent to McCreary under the radar.

8. While at McCreary, plaintiff, was placed in shu under a ficticious SIS investigation being conducted by SIA HUFF, (who Plaintiff had previously filed a complaint against) along with Lt. Bruchette. Huff and A.W. Mcleod both told Plaintiff that he was going to be transfered because " they didn't need the paper-work up here". Huff stated that he would do the investigative report "personally" then pass it off to Bruchette to ensure Plaintiff would be shipped. This SHU placement and investigation came right after plaintiff filed a complaint against Huff, because all allegations ofr staff misconduct are sent to SIS, he was able to get the complaint and retaliate. Lt. Bruchette had the investigative report for over 90 days yet allowed Plaintiff to sit in shu all that time, and then recommended that plaintiff be sent to the "lock down" unit at lewisburg. CMC Sheldrake directed C.M. Tucker to put Plaintiff in for smu, in collusion with Huff, Mclead, and Bruchette.

9. Everyone else involved in this so called investigation who in fact had been involved in phisical acts and altercations were sent back to the general population...(one was transfered to another institution in general population). No one else has been or is being sent to a control lock down unit,,,because none of them filed complaints against the staff for being abusive.

10. Staff here are trying to have plaintiff sent to lewisburg in retaliation for filing complaints against staff, and as a form of punishment as the brutal and abusive nature of lewisburg is well known. If plaintiff is returned their the staff will do everything in there powere to have plaintiff assaulted and or killed.

Wherefore, Plaintiff requests that a preliminary injunction be entered or TRO preventing plaintiff's transfer until either this case is resolved or a hearing can be held to sort out the facts.

Such other and further relief as the court may deem just and proper.

Respectfully

DEMETRIUS HILL
#68133-053
U.S.P.McCREARY
P.O.BOX 3000
pine knot,Ky, 42635

I, Demetrius Hill, declare under Penalty of Perjury that the foregoing is true and correct. Pursuant to 28 U.S.C. 1746 —

1/9/09 Demetrius Hill